IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| DEIRDRA J. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 5:02-cv-2662-MEF |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deirdra Brown (hereinafter "Plaintiff"), proceeding *pro se*, brought this action pursuant to the Freedom of Information Act, (hereinafter "FOIA"), 5 U.S.C. § 552, in conjunction with the Privacy Act, (hereinafter "PA"), 5 U.S.C. § 552a, seeking access to and amendment of documents maintained by the United States Attorney's Office in the Northern District of Alabama where she was formerly employed. (Doc. # 1, Compl.).[1]

This action is presently before the court on the motion to dismiss filed by the Defendant. (Doc. # 8). For the reasons that follow, the court concludes that the motion to dismiss is due to be GRANTED.

---

[1] The court previously dismissed the individual defendants from this action. Specifically, Defendant John D. Ashcroft, who was sued in his official capacity as head of the United States Department of Justice, and Defendant Alice Martin, who was sued in her official capacity as the United States Attorney for the Northern District of Alabama, were dismissed by order of the court. (Doc. # 34).

## I.   FACTUAL BACKGROUND[2] AND PROCEDURAL HISTORY

This lawsuit stems from Plaintiff's numerous requests to the Executive Office of the United States Attorney (hereinafter "EOUSA") for the release and amendment of certain documentation and information.  Specifically, Plaintiff seeks the release and amendment of certain information maintained by the EOUSA pertaining to her previous employment with the United States Attorney's Office (hereinafter "USAO") in the Northern District of Alabama (hereinafter "NDAL").  The Complaint and its accompanying written exhibits establish the following facts.

### A.   *Plaintiff's Employment and Requests for Information*

Plaintiff, an African-American female and former Assistant United States Attorney in the NDAL, alleges that she was subjected to racial and gender harassment[3] which created a hostile work environment and interfered with her official duties.  According to Plaintiff, despite her reporting of this activity to management, the harassment continued.

---

[2]  For purposes of considering the motion to dismiss, the court presumes that the allegations in the Complaint are true.

[3]  Plaintiff alleges that

> [b]etween March 1998 and May 2002 . . . [she] was targeted by employees of the [USAO].  These employees labeled Plaintiff a "black bitch," called Plaintiff "rude and arrogant," sabotaged Plaintiff's work, slashed the front passenger side tire of Plaintiff's car, and leveled false allegations of federal misconduct at Plaintiff in an attempt to have her fired and indicted.

(Compl. at pp. 1-2).  She also alleges that she suffered emotional and financial distress.

2

Consequently, Plaintiff was terminated from her position on May 13, 2002.[4]

Believing that USAO files contained false and inaccurate information about her, Plaintiff submitted a FOIA and PA request to the EOUSA on May 13, 2002.[5] Plaintiff's request sought:

> copies of any and all files which in any way related to [her] employment, specifically but not limited to:
>
> 1. Any letters, memoranda, documents, e-mails or other notations placed in [her] files by Huntsville Branch Office Supervisor Will Chambers, Personnel Administrator China Davidson, Former Criminal Division Chief Joe McLean, and current United States Attorney Alice Martin accusing [Plaintiff] of unprofessional conduct or misconduct of any kind.
>
> 2. Any letters, memoranda, documents, e-mails or other notations submitted by former [Huntsville Branch Office] Supervisor Victor Conrad, Sandra Coker, and any other employee of the Huntsville Branch Office, concerning the existence of a racially hostile environment directed at [Plaintiff] by persons at the [USAO] for the [NDAL] between the dates March 15, 1998 and the date of [the] letter.
>
> 3. Any letters, memoranda, documents, e-mails or other notations concerning plans to terminate [Plaintiff] written by any member of the current and/or former supervisory staff of the USAO for the [NDAL] at any time between March 15, 1998 and the date of [the] letter.
>
> 4. The document known as the "cloud" letter submitted "anonymously" containing unsubstantiated accusations of "leave time abuses" against [Plaintiff].
>
> 5. The unsubstantiated EEO complaint filed by [illegible] in 1999 accusing [Plaintiff] of creating a racially hostile environment at the Huntsville Branch Office.
>
> 6. Any memoranda, letters, e-mails, documents or other notations submitted by members of Federal Law Enforcement community in the [NDAL], to personnel of the [USAO] containing accusations of misconduct of any kind against [Plaintiff].

---

[4] (*Id.* at p. 15).

[5] (*Id.* at Ex. 24, p. 78).

This request was signed by Plaintiff and included her home address.[6]

Ten days later, on May 23, 2002, since Plaintiff had not received any response from the EOUSA regarding her request, she sent another letter to the EOUSA inquiring about her previous letter and requesting "copies of all records of any sort prepared by the management staff of the USAO [in the NDAL] about their recent decision to terminate [her]."[7]  Six days later, on May 29, 2002, since Plaintiff had not received any response from the EOUSA, she sent a third letter inquiring about her previous letters.[8]  Six days thereafter, in a letter dated June 4, 2002, Plaintiff inquired about her previous letters and requested additional information under the FOIA and PA.[9]

---

[6] (*Id*.).

[7] (*Id*. at Ex. 25, p. 79).  This exhibit indicates that the letter was dated May 20, 2002 but was not mailed or postmarked until May 23, 2002.  (*Id*.).

[8] (*Id*. at Ex. 26, p. 80).  This exhibit indicates that the letter was dated May 29, 2002 and was postmarked on May 29, 2002.  (*Id*.).

[9] (*Id*. at Ex. 27, p. 81).  This letter reiterated Plaintiff's request for information as noted in her previous letters and sought additional information.  For example, in Plaintiff's previous May 13, 2002 letter she requested

> [a]ny letters, memoranda, documents, e-mails or other notations concerning plans to terminate [her] *written by any member of the current and/or former supervisory staff* of the [USAO] for the [NDAL] *at any time between March 15, 1998 and the date of [the] letter*.

(*Id*. at Ex. 24, p. 78, ¶ 3) (emphasis added).  However, in her June 4, 2002 letter she requested

> [a]ny and all correspondence, memoranda, e-mails, documents or other notations *maintained by personnel or the management staff* of the [USAO] *relating* to the [USAO]'s decision to terminate [her] on May 13, 2002.

4

By a letter dated June 12, 2002, the EOUSA responded to Plaintiff's FOIA and PA request.[10] EOUSA's letter acknowledged receipt of Plaintiff's request and informed her that it was assigned request number 02-1512.[11] This letter also informed Plaintiff that

> [Her] request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request). Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

> EOUSA makes every effort to process most requests within a month (20 working days). There are some exceptions, for example, Project Requests take approximately nine months to process. Requests for "all information about myself in criminal case files" are Project Requests. If you have made such a request, you may either write us and narrow your request for specific items, or we will consider that you have agreed to a due date of nine months from the date of this letter.

The letter further stated that the EOUSA is required to charge fees for time used to search for the documents requested, but it does not require a payment for the charges until it has received an agreement from the requester to pay the fees and it has processed the request.[12]

Over a month later, in a letter dated July 10, 2002, Plaintiff complained to the EOUSA that, despite her receipt of the June 12, 2002 letter from the agency, she had "yet to receive the requested documents."[13] Shortly thereafter, in a letter dated July 16, 2002, Plaintiff

---

(*Id*. at Ex. 27, p. 81, ¶ 3) (emphasis added).

[10] (Def. Mot., Ex. 1-E).

[11] (*Id*.).

[12] (*Id*.).

[13] (Compl. at Ex. 28, p. 83).

inquired about the delay in responding to her previous request[14] and submitted two additional FOIA and PA requests for information.[15]

In a letter dated August 5, 2002, Plaintiff opined to the EOUSA that its delay in providing her the requested documents was unreasonable and warned the EOUSA that a failure to respond to her request will cause her to "submit these issues to a Federal District Court for resolution." [16] Four days later, in a letter dated August 9, 2002, Plaintiff submitted another FOIA and PA request for information to the EOUSA.[17]

A month thereafter, in a letter to the EOUSA dated September 9, 2002, Plaintiff remarked that she had been informed by Bonnie Gray in a "discussion [that] afternoon" that the "review" of her information request "would take two to three weeks" and noted that, as a result of that discussion, she "expected to receive all relevant documents on or before September 17, 2002."[18]

In a letter dated September 26, 2002, Plaintiff requested a correction of false

---

[14] In this July 16, 2002 letter, Plaintiff explicitly refers to "request #02-1512." (*Id*. at Ex. 29, p. 84).

[15] Plaintiff requested a copy of a "secret personnel file maintained by U.S. Attorney Alice Martin" and "the contents of the security file prepared in connection with [an FBI] background investigation." (*Id*. at Ex. 29, p. 84).

[16] (*Id*. at Ex. 30, p. 85).

[17] (*Id*. at Ex. 31, p. 86). In this letter, Plaintiff requested a "copy of all documents maintained by the Office of Attorney Personnel Management . . . that pertain to [her]." (*Id*.).

[18] (*Id*. at Ex. 32, p. 87). In this letter, Plaintiff explicitly refers to "request #02-1512." (*Id*.).

information in her personnel file.[19]  In this letter, Plaintiff also complained that the USAO had not complied with the PA and requested that the agency "confirm or deny that [it has] any records (disciplinary letters, counseling reports, letters of reprimand) pertaining to the allegations of misconduct against [her]."[20]  Plaintiff further requested that the USAO provide to her a copy of any such records, identify the individuals who made the allegations against her, and allow her an opportunity to respond to the allegations.[21]

A month thereafter, on October 29, 2002, dissatisfied with Defendant's actions, Plaintiff filed this lawsuit.

### B.    This Lawsuit and Procedural History

Plaintiff filed a Complaint on October 29, 2002, alleging claims under the FOIA, 5 U.S.C. § 552, and the PA, 5 U.S.C. § 552a.[22]  By her Complaint, Plaintiff alleges that the Defendant and the USAO "have in their control, possession [sic], agency records documenting this pattern of race and gender abuse and hostility against [her]" and argues that "despite repeated requests, the [Defendant] and [USAO] have unlawfully withheld these documents, and continue to refuse to disclose them to her."[23]  Plaintiff also alleges that, despite her request to "correct false information contained in her personnel file regarding

---

[19]  (*Id.* at Ex. 33, pp. 88-89).

[20]  (*Id.*).

[21]  (*Id.*).

[22]  (Doc. # 1, Compl.).

[23]  (*Id.* at p. 2).

false accusations made in the letter of termination," the DOJ has refused to "correct this misinformation."[24]    Plaintiff seeks to enjoin Defendant from "continuing this unlawful activity, and to compel [it] to disclose the requested agency records required by law."[25] Plaintiff also seeks an order from the court directing the "Office of Special Counsel to initiate proceedings to determine whether disciplinary action[26] is warranted" against Defendant.[27] Alternatively, Plaintiff seeks an order from the court directing the Defendant to pay to her actual damages, attorney's fees and costs.[28]

On December 28, 2002, Defendant filed a motion to strike, motion to dismiss or in the alternative, motion for summary judgment.[29]   By its motion, Defendant moves to strike "all

---

[24] (*Id*. at p. 15).

[25]  (*Id*.).

[26] Plaintiff alleges that the circumstances surrounding the decision to withhold documents is "arbitrary and capricious," and therefore seeks a determination of disciplinary action on these grounds. (*Id*.).

[27] (*Id*.).

[28] (*Id*. at pp. 2-3).  Plaintiff alleges that she is entitled to said relief because Defendant acted "deliberately, intentionally and willfully" and asserts that "deliberate concealment of agency records that would corroborate illegal and discriminatory employment practices cannot be tolerated from the very agency we count upon as citizens of this Country to *enforce* the Civil Rights laws." (*Id*. at p. 3).

[29] (Doc. # 8).  Although styled as a motion to dismiss or alternatively a motion for summary judgment, the court has not considered matters outside the pleadings in reaching its decision.  The court will, however, consider the documents attached to–or referred to in–the Complaint.  Generally, consideration of matters beyond the complaint is improper in the context of a motion to dismiss. However, a written exhibit attached to a pleading becomes part of the pleading.  Fed. R. Civ. P. 10(c).  Thus, where a plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claims, the court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d

immaterial, impertinent and scandalous portions from the Complaint" and moves to dismiss

the Complaint for failure to state a claim due to Plaintiff's failure to exhaust administrative

remedies.[30]   Plaintiff filed her response in opposition to the motion on February 27, 2003.[31]

On March 7, 2003, this case was reassigned to the undersigned judge.[32]   Thereafter,

on April 11, 2003, the undersigned held a hearing in this action and heard arguments from

the parties in relation to the motion to dismiss.[33]   The parties submitted additional briefs on

the issues before the court in the motion to dismiss and thus the motion is ripe for the court's

---

1364, 1369 (11th Cir. 1997).  *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the *pleadings and exhibits attached thereto*.") (internal quotations and citation omitted) (emphasis added); *also Taylor v. Appleton*, 30 F.3d 1365, 1368 n. 3 (11th Cir. 1994) (noting that district court's reliance on an exhibit attached to the complaint did not convert Rule 12(b)(6) motion to Rule 56 motion for summary judgment because exhibit was part of the pleadings); *Beeline Entm't Partners, TD., v. County of Orange*, 2003 WL 257550, * 2 (M.D. Fla. 2003) ("Attachment of documents [referred to in the complaint] to the motion to dismiss does not require conversion of the motion into a motion for summary judgment."). As a result, the court will hereafter treat Defendant's motion as only one for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

[30]   Defendant also moves to dismiss the Complaint for lack of subject matter jurisdiction. Contrary to Defendant's arguments, exhaustion of administrative remedies is not a jurisdictional requirement.  *Taylor, supra* (citing *Dresser Indus., Inc. v. United States*, 596 F.2d 1231, 1238 (5th Cir. 1979) (exhaustion of administrative remedies under FOIA); *Taylor v. United States Treasury Dep't*, 127 F.3d 470 (5th Cir. 1997) (exhaustion of administrative remedies under PA).  Rather, it is an issue which should be addressed by the court in determining whether a plaintiff fails to state a claim upon which relief can be granted.  *Id*.  Hence, the court finds that Defendant's argument pertaining to lack of subject matter jurisdiction is without merit.

[31]   (Doc. #12).

[32]   (Doc. # 15).

[33]   (Doc. # 19).

9

consideration.[34]

## II.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 5 U.S.C. § 552(a)(4)(B) (Freedom of Information Act), 5 U.S.C. § 552a(g)(1) (Privacy Act), and the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations supporting both.

## III.  STANDARD OF REVIEW

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint.  *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted).  The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party.  *Hishon,* 467 U.S. at 73.  Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).

## IV.  DISCUSSION

---

[34] (Docs. # 24, 25, 29, 30).

A.      *Freedom of Information Act Claims*

Congress enacted the Freedom of Information Act ("FOIA") to facilitate public access to government documents. *United States Dep't of State v. Ray,* 502 U.S. 164, 173 (1991) (citation omitted). FOIA establishes a regime "designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose,* 425 U.S. 352, 361 (1976). A government agency is generally required to make full disclosure in response to a citizen's request for public information under the FOIA. 5 U.S.C. § 552; *see also Sherman v. United States Dep't of the Army,* 244 F.3d 357, 360 (5th Cir. 2001) (*citing Ray,* 502 U.S. at 173). There is a strong presumption in favor of disclosure that places the burden on the agency to justify the withholding of any documents. *Ray,* 502 U.S. at 173 (citations omitted).

FOIA's scrutiny extends to the judiciary as a citizen may seek judicial relief when an agency does not comply with a FOIA request to that citizen's satisfaction. *See* 5 U.S.C. § 552(a)(4)(B). In order to receive such judicial review, a citizen must exhaust his administrative remedies before requesting judicial relief. Although the FOIA does not expressly require such exhaustion of administrative remedies, the courts require exhaustion as a precondition to filing a lawsuit. *See Taylor*, 30 F.3d at 1367-368 ("The FOIA clearly requires a party to exhaust all administrative remedies before seeking redress in the federal courts. This exhaustion requirement is a condition precedent to filing suit. . . ."). Requiring litigants to exhaust their administrative remedies insures that there is no premature

11

interruption of the administrative process and that the administrative agency involved has an opportunity to correct its own errors.  *McKart v. United States*, 395 U.S. 185, 193-94 (1969).

The central issue in this case is whether Plaintiff complied with the exhaustion requirement prior to filing this suit.  The Eleventh Circuit has stated:

> FOIA provides for two different types of exhaustion, actual and constructive.  Actual exhaustion occurs when the agency denies all or part of a party's document request.  Constructive exhaustion occurs when certain statutory requirements are not met by the agency.

*Taylor*, 30 F.3d at 1368.  As it is undisputed that actual exhaustion did not occur *prior* to the filing of this lawsuit, the paramount issue before the court is whether constructive exhaustion has occurred.

"A party is deemed to have constructively exhausted all administrative remedies 'if the agency fails to comply with the applicable time limit provisions of [5 U.S.C. § 552(a)].'" *Id*. (quoting 5 U.S.C. § 552(a)(6)(C)).  Two time limits are set forth in 5 U.S.C. § 552(a). After receiving an FOIA request, a federal agency must:

> determine within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination. . . .

5 U.S.C. § 552(a)(6)(A)(i).  The second time limit concerns appeals and requires the agency to:

> make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld,

12

the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

5 U.S.C. § 552(a)(6)(A)(ii).

Courts have held that only a valid FOIA request can trigger an agency's FOIA obligations, and that "failure to file a perfected request therefore constitutes failure to exhaust administrative remedies." *Dale v. Internal Revenue Serv.*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002) (citing 5 U.S.C. § 552(a)(3) and 26 C.F.R. § 601.702(c)(5)); *see also Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1311-12 (D.C. Cir. 2003) (basing its analysis on the defendant's argument that the plaintiff had not constructively exhausted because the non-conforming FOIA request could not be considered "received" and thus could not trigger the 20-day limit); *Crooker v. Central Intelligence Agency*, 577 F.Supp. 1225 (D.D.C. 1984); *Lilienthal v. Parks*, 574 F.Supp. 14, 17 (E.D. Ark. 1983). Compliance with both FOIA and agency requirements is necessary before the agency can release the requested documents. 5 U.S.C. § 552(a)(3)(A); 26 C.F.R. § 16.3. *See Brumley v. United States Dep't of Labor*, 767 F.2d 444, 445 (8th Cir. 1985) (response by an agency is only required when "any request ... is made in accordance with" agency rules). Failure to comply with agency FOIA regulations amounts to a failure to exhaust administrative remedies, which warrants dismissal. *See Dale,* 238 F. Supp. 2d at 103; *also Gillin v. Internal Revenue Serv.*, 980 F.2d 819 (1st Cir. 1992); *Voinche v. United States Dep't of Air Force*, 983 F.2d 667, 669 n. 5 (5th Cir. 1993).

The requirements under the FOIA are minimal: a request need only (i) "reasonably describe" the records sought and (ii) comply with any "published rules stating the time, place,

fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). Pursuant to the

FOIA, Defendant has promulgated regulations that detail the rules and procedures that must

be followed by persons requesting its records. *See* 5 U.S.C. § 552(a)(2). Defendant's

regulations require that FOIA requests must be reasonably detailed:

> You must describe the records that you seek in enough detail to enable
> Department personnel to locate them with a reasonable amount of effort.
> Whenever possible, your request should include specific information about
> each record sought, such as the date, title or name, author, recipient, and
> subject matter of the record. In addition, if you want records about a court
> case, you should provide the title of the case, the court in which the case was
> filed, and the nature of the case. If known, you should include any file
> designations or descriptions for the records that you want. As a general rule,
> the more specific you are about the records or type of records that you want,
> the more likely the Department will be able to locate those records in response
> to your request. . . .

28 C.F.R. § 16.3(b). Hence, despite the minimal FOIA requirements, a FOIA request

submitted to Defendant cannot be spacious.

"The linchpin inquiry is whether 'the agency is able to determine precisely what

records are being requested.'" *Dale*, 238 F. Supp. 2d at 104. (quoting *Tax Analysis v.*

*Internal Revenue Serv.*, 117 F.3d 607, 610 (D.C. Cir. 1997)). "A description 'would be

sufficient if it enabled a professional employee of the agency who was familiar with the

subject area of the request to locate the record with a reasonable amount of effort.'" *Id*.

(quoting *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978)). "Broad sweeping

requests lacking specificity are not sufficient." *Id*. (citing *American Fed. of Gov't Employees*

*v. United States Dep't of Commerce*, 632 F. Supp. 1272, 1277 (D.D.C. 1986)).

Consequently, courts have found that FOIA requests for *all* documents *concerning* a requester are too broad. *See Mason v. Callaway*, 554 F.2d 129, 131 (4th Cir. 1977) (request for "all correspondence, documents, memoranda, tape recordings, notes, and any other material pertaining to the atrocities committed against plaintiffs, . . . including, but not limited to, the file of [various government offices] . . . typifies the lack of specificity that Congress sought to preclude in the requirement of 5 U.S.C. § 552(a)(3) that records sought be reasonably described"); *Hunt v. Commodity Futures Trading Comm'n*, 484 F. Supp. 47, 51 (D.D.C. 1979) (request for all documents concerning requester too broad); *Keese v. United States*, 632 F. Supp. 85, 91 (S.D. Tex. 1985) ("Requests for all documents containing a requester's name are not reasonably specific as required by the FOIA."). "[T]he rationale for this rule is that the FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Assassination Archives & Research Ctr. v. Central Intelligence Agency*, 720 F. Supp. 17, 219 (D.D.C. 1989).

Here, the court finds that Plaintiff has failed to exhaust her administrative remedies because she has not filed a proper FOIA request. Plaintiff's initial FOIA request, which was dated May 13, 2002, sought:

> *any* and *all files* which in *any way related* to [her] employment, specifically but *not limited* to:
>
> 1. *Any letters, memoranda, documents, e-mails or other notations* placed in [her] files by Huntsville Branch Office Supervisor Will Chambers, Personnel Administrator China Davidson, Former Criminal Division Chief Joe McLean, and current United States Attorney Alice Martin accusing [Plaintiff] of unprofessional conduct or misconduct of *any* kind.

2.      *Any letters, memoranda, documents, e-mails or other notations* submitted by former [Huntsville Branch Office] Supervisor Victor Conrad, Sandra Coker, and *any other employee* of the Huntsville Branch Office, concerning the existence of a racially hostile environment directed at [Plaintiff] by persons at the [USAO] for the [NDAL] between the dates March 15, 1998 and [May 13, 2002].[35]

3.      *Any letters, memoranda, documents, e-mails or other notations* concerning plans to terminate [Plaintiff] written by *any member* of the *current and/or former supervisory staff* of the USAO for the [NDAL] at any time between March 15, 1998 and  [May 13, 2002].

4.      The document known as the "cloud" letter submitted "anonymously" containing unsubstantiated accusations of "leave time abuses" against [Plaintiff].

5.      The unsubstantiated EEO complaint filed by [illegible] in 1999 accusing [Plaintiff] of creating a racially hostile environment at the Huntsville Branch Office.

6.      *Any memoranda, letters, e-mails, documents or other notations* submitted by members of Federal Law Enforcement community in the [NDAL], to personnel of the [USAO] containing accusations of misconduct of *any* kind against [Plaintiff].

(Compl. at Ex. 24, p. 78) (emphasis added).  Plaintiff's second FOIA request, which was dated June 4, 2002, sought the additional information of

> [a]*ny and all correspondence, memoranda, e-mails, documents or other notations* maintained by personnel or the management staff of the [USAO] *relating* to the [USAO's] decision to terminate [her] on May 13, 2002.

(Compl. at Ex. 27, p. 81, ¶ 3) (emphasis added).  These FOIA requests do not describe the records sought with "reasonably sufficient detail" in light of both statutory guidance and case law.  Notwithstanding the Defendant's acknowledgment letter of June 12, 2002, explaining that  Plaintiff could "write [Defendant] and narrow [her] request" (Def. Mot., Ex. 1-E), Plaintiff did not provide a written response to Defendant which contained the necessary

---

[35] The court notes that this is a four-year time span.

16

reasonably specific information to narrow and perfect her FOIA request.  Rather, Plaintiff

submitted four additional FOIA requests of the same spacious nature as her initial request.

(Compl. at Exs. 29, 31, 33).

Accordingly, Plaintiff's broad FOIA requests did not reasonably describe the records

sought and thus would not permit an employee of Defendant to locate the records with a

"reasonable amount of effort."  *See* 28 C.F.R. § 16.3(b).  Her requests do not specify the

records she seeks, do not include any specific titles of the "letters, memoranda, documents,

e-mails or notations" sought, do not include the particular names of all authors or recipients

of such records, and fails to provide any specific dates of the records requested.  Absent

further description of the particular records sought, Defendant's employees would not know

where to begin–nor when to end–the search.  Put another way, Plaintiff's FOIA requests were

wholly deficient and no effort was made to cure the deficiencies.  As a result, the court finds

that Plaintiff failed to file a proper request under the FOIA in compliance with the statute,

the applicable regulations and relevant case law.

Given that Plaintiff failed to perfect her FOIA requests, she did not exhaust her

administrative remedies.  *Dale, supra*.  As judicial review of these requests clearly would

prematurely interfere with the agency process, the court declines  review.  *Hidalgo v. Fed.

Bureau of Investigation*, 344 F.3d 1256, 1259-60 (D.C. Cir. 2003) (directing the district court

to decline judicial review of a requester's premature appeal because his appeal did not serve

the purposes of exhaustion); *Flowers v. Internal Revenue Serv.*, 307 F. Supp. 2d 60 (D.D.C.

2004).   Accordingly, Defendant's motion to dismiss is due to be granted in relation to Plaintiff's FOIA claims.

B.     *Privacy Act Claims*

Congress enacted the Privacy Act (hereinafter "PA") to promote "governmental respect for the privacy of citizens by requiring all departments and agencies of the executive branch and their employees to observe certain constitutional rules in the computerization, collection, management, use and disclosure of personal information about individuals." *Wren v. Harris*, 675 F.2d 1144, 1145-46 (10th Cir. 1982) (citation omitted).  The PA governs the maintenance and dissemination of official federal government records pertaining to individuals.  *Blazy v. Tenet*, 979 F. Supp. 10, 16 (D.D.C. 1997).  The PA "also creates a mechanism by which individuals can access their own records and request amendments to them when the records contain inaccuracies."  *Id*.  Finally, the PA "provides for actual damages where the agency's failure to maintain record accuracy is found to be 'intentional or willful.'"  *Id*. (citing 5 U.S.C. §552a(g)(4)).

In the case *sub judice*, Plaintiff alleges claims under the PA for release of certain records, amendment of certain records and monetary damages.  The court will address Plaintiff's claims in turn.

1.     *Access to Records*[36]

---

[36]  The court must analyze Plaintiff's request for records under the FOIA and PA individually because access to documents under these statutes are dissimilar.  "Even where a requester is not entitled to a document under the Privacy Act, he or she may still be entitled to it under the FOIA." *Blazy*, 979 F. Supp. at 16 (citing 5 U.S.C. § 552a(t)(2) ("No agency shall rely on any [Privacy Act]

As mentioned above, the PA gives individuals access to federal agency records pertaining to them. Under 5 U.S.C. § 552a(d)(1), upon an individual's request, an agency must disclose all of the information pertaining to that person that is contained in the agency's records.[37]  In this case, Plaintiff brought suit claiming that, despite her requests, Defendant failed to disclose all of the information pertaining to her that is contained in its records.

Under the PA, an individual can sue whenever an agency refuses to comply with an individual's request for disclosure of information pertaining to him or her.  *See* 5 U.S.C. §

---

exemption to withhold from an individual any record which is otherwise accessible to such individual under the provisions of the [FOIA].")).  As clarified by the Tenth Circuit,

> the FOIA begins with the premise that all activities of a federal agency should be subject to public scrutiny.  The PA limits this scrutiny where the information is personal to an individual. However, when the individual to whom the information pertains is also the individual requesting the information, the PA presumes that disclosure to that individual will occur.  5 U.S.C. § 552a(d)(1). Stated otherwise, the PA provides rights to the individual with respect to his own records greater than the rights of the public generally.

*Wren*, 675 F.2d at 1146.

[37] Section 552a(d)(1) of the PA provides that each agency that maintains a system of records shall:

> (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence;

5 U.S.C. § 552a(d)(1).

552a(g)(1).[38] However, alike the FOIA, an individual that made a request under the PA must exhaust all administrative remedies prior to bringing suit.

Although the PA contains no express statutory requirement of exhaustion of administrative remedies, courts have held that for a plaintiff to obtain a civil remedy under the PA for a violation of their access rights, he or she must first exhaust administrative remedies. *Fisher v. Fed. Bureau of Investigation*, 94 F. Supp. 2d 213, 216 (D. Conn. 2000) (citing *Biondo v. Dep't of Navy,* 928 F. Supp. 626, 630 (D.S.C. 1995), *aff'd* 86 F.3d 1148 (4th Cir. 1996)).  This requirement "allow[s] the agency the opportunity to exercise its expertise and develop a record for review. . . [and to] correct misunderstandings or errors, [while

---

[38]  Section 552a(g)(1) provides:

Whenever any agency
    (A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;
    (B) refuses to comply with an individual request under subsection (d)(1) of this section;
    (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or
    (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,
the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1).

saving the court] a considerable expenditure of time." *Biondo*, 928 F. Supp. at 631.

Parallel to the FOIA, a failure to make a proper request under the PA which comports with applicable regulatory requirements constitutes failure to exhaust administrative remedies. *See Taylor v. United States Treasury Dep't*, 127 F.3d 470 (5th Cir. 1997). Pursuant to the PA, Defendant has promulgated regulations that detail the rules and procedures that must be followed by persons requesting its records. *See* 5 U.S.C. § 552a(f). Under the regulations promulgated by Defendant, a proper PA request must comply with the specific requirements set forth in 28 C.F.R. § 16.41. In this case, Plaintiff failed to make a proper request under the PA which comported with 28 C.F.R. § 16.41 and thus has failed to exhaust her administrative remedies.

First, Plaintiff's PA requests failed to comply with the description requirements of 28 C.F.R. § 16.41. While the regulations promulgated under the FOIA require only a reasonable description of the requested documents, *see supra*, the regulations under the PA possess much more specific requirements for describing requested documents. 28 C.F.R. § 16.41(b) provides in pertinent part:

You must describe the records[39] that you want in enough detail to enable

---

[39] "Records" is defined in the PA as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual; such as a finger or voice print or a photograph." 5 U.S.C. § 552a(a)(4).

Department personnel to locate the system of records[40] containing them with a reasonable amount of effort.  Whenever possible, your request should describe the records sought, the time periods in which you believe they were compiled, and the name or identifying number of each system of records in which you believe they are kept.  The Department publishes notices in the Federal Register that describe its components' systems of records. . . .

28 C.F.R. § 16.41(b).  The Federal Register lists systems of records or documents that may be searched.  *See, e.g.,* Privacy Act of 1974: Systems of Records, 63 Fed.Reg. 8659-02 (1998) (modifying particular systems of records).[41]  Plaintiff's PA requests plainly do not comply with 28 C.F.R. § 16.41(b) as she did not describe the system of records sought nor list the name or identifying number of each system of records sought.  Such a task is not impossible.  Plaintiff could have determined from the description of records and persons covered by the systems contained in the Federal Register which systems may contain the types of records that she sought and made her requests accordingly.

Second, Plaintiff's PA requests failed to comply with Defendant's regulations pertaining to identity requirements for PA requests.  Pursuant to Defendant's regulations, requests under the PA must satisfy a more stringent identity requirement than those submitted under the FOIA.  *See* 28 C.F.R. § 16.41(d).  In accordance with 28 C.F.R. §

---

[40]   A "system of records" is defined in the PA as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C. § 552a(a)(5).

[41]   The following are some of Defendant's system records listed in the Federal Register: Antitrust Information Management System, Central Civil Rights Division Index File and Associated Records, Central Criminal Division Index File and Associated Records, Civil Division Case File System, Civil Case Files, Criminal Case Files, and Administrative File System.

16.41(d), in a request for records under the PA, a requester must verify their identity.

> You must state your full name, current address, and date and place of birth. You must sign your request and your signature must either be notarized or submitted by you under 28 U.S.C. [§] 1746, a law that permits statements to be made under penalty of perjury as a substitute for notarization. . . . In order to help the identification and location of requested records, you may also, at your option, include your social security number.

28 C.F.R. § 16.41(d).  Plaintiff's PA requests also fail to meet these requirements because they do not include her place of birth, a notarized signature nor signature submitted under 28 U.S.C. § 1746.

The court concludes that Plaintiff's failure to exhaust her administrative remedies indicates that she has failed to state a claim upon which relief can be granted. *See Taylor*, 127 F.3d at 476.  Plaintiff's failure to present a request that comported with applicable PA regulations constituted a failure to exhaust administrative remedies because, as a technical matter, Defendant never denied a properly framed request for access to records. *See id. Also, Lilienthal*, 574 F. Supp. at 18 (dismissing PA claim for failure to exhaust administrative remedies on ground that plaintiff's PA request failed to comply with regulations regarding verification of the requester's identity).  Moreover, since Plaintiff never presented Defendant with a proper PA request, Defendant never *improperly* withheld records from her.[42]  Accordingly, Plaintiff's claims under the PA for denial of access to

---

[42]  Arguably, this issue need not be regarded as presenting a question of exhaustion at all. The PA provides federal district courts with jurisdiction to "enjoin the agency from withholding the records and order the production to the complainant of any agency records *improperly* withheld from him."  5 U.S.C. § 552a(g)(3)(A) (emphasis added). Section 552a(g)(3)(A) indicates that the administrative procedure with which Plaintiff failed to comply--submission of a properly framed

23

records is due to be dismissed.

> 2.    *Amendment to Records*

As mentioned previously, the PA permits an individual to request the amendment of a record pertaining to him or her and requires the agency either to promptly correct such record or explain its reasons for refusing to amend.  *See* 5 U.S.C. § 552a(d)(2).  If the agency refuses to make the requested amendment, the PA creates a procedure by which a requester  may request agency review of that refusal; if the agency maintains its refusal, the requester may file a statement of disagreement that serves as an annotation to all future disclosures. 5 U.S.C. §§ 552a(d)(3) and (4).  Finally, the PA permits an individual to bring a civil action challenging an agency's refusal to amend.  5 U.S.C. § 552a(g)(1)(A).

As a prerequisite to bringing an action in district court for an order to amend an agency's individual record under the PA, a plaintiff must have exhausted administrative remedies in attempting to have improper material in his or her personnel file eliminated.  *See Hewitt v. Grabicki*, 794 F.2d 1373, 1377 (9th Cir. 1986).

> An individual seeking amendment of a record must follow the procedures laid out in subsections 552a(d)(2) and (d)(3) of the Privacy Act, namely, request amendment of the record and, if the request is denied, request review of the

---

request--is a necessary element of her claim for injunctive relief.  Plaintiff's requests, which are attached as exhibits to her Complaint, manifestly indicate that she never made a proper PA request because her requests do not describe the system of records sought, do not list the name or identifying number of each system of records sought, and do not include her place of birth and a notarized signature as required by applicable regulations. Thus, the face of Plaintiff's Complaint indicates that she has failed to state a claim upon which relief can be granted.   Under this theory of the case, to the extent that Plaintiff never presented Defendant with a proper PA request, Defendant never *improperly* withheld records from her.  *See Taylor*, 127 F.3d at 475 n. 6.

denial.  The Act only authorizes suit after an agency "makes a determination under subsection (d)(3) . . . or fails to make such a review in conformity with that subsection."  5 U.S.C. § 552a(g)(1)(A).  In other words, no suit will lie until subsection (d)(3) has been invoked and the explicit steps of the statute followed.  *See Dickson v. Office of Personnel Management,* 828 F.2d 32, 40 (D.C. Cir. 1987).

*Blazy*, 979 F. Supp. at 18.

By her Complaint, Plaintiff alleges that the letter of termination in her personnel file includes false accusations and that Defendant failed to amend that record in accordance with her PA request to do so.  This lawsuit is complicated by the fact that Plaintiff requested amendment of her personnel records but failed to follow Defendant's established procedures for satisfying such a request.

Plaintiff's September 26, 2002 request letter[43] does not constitute a PA request for amendment or review under 5 U.S.C. §§ 552a(d)(2) and (d)(3).  The specific procedures established by Defendant for such requests are set forth at 28 C.F.R. § 16.46 and they require Plaintiff to comply with the procedures set forth in 28 C.F.R. § 16.41, the procedures for requests for access to records.  As discussed earlier in this opinion, *supra*, Plaintiff failed to comply with the verification of identity requirement of 28 C.F.R. § 16.41(d).[44]  Plaintiff

---

[43]  As evidenced by her PA letter requests attached to her Complaint, she made four PA letter requests dated May 13, 2002, June 4, 2002, July 10, 2002, and August 9, 2002, but these letters merely demanded access and made no mention of any request for amendment of records or for review of any denial of such a request.  Rather, Plaintiff's only express request for amendment is contained in her letter dated September 26, 2002.

[44]  Specifically, Plaintiff failed to include her place of birth and a notarized signature or signature submitted under 28 U.S.C. § 1746 on her September 26, 2002 request.  She did include however her date of birth in this request.

25

was obliged to follow Defendant's procedures in order to initiate her amendment claims.

*See* 5 U.S.C. §§ 552a(e) and (f); *Haase v. Sessions*, 893 F.2d 370, 373-75 (D.C. Cir. 1990)

(claimants must exhaust administrative claims via agency procedures)*; Blazy*, 979 F. Supp.

at 19 (a requester is not "permitted to leapfrog the detailed exhaustion requirements of the

[PA] and proceed immediately to Court").   Accordingly, since Plaintiff failed to comply

with Defendant's procedures for submitting a proper PA request for amendment, she has not

exhausted her administrative remedies.   As a result, she is not entitled to injunctive relief

in the form of amendment of her personnel records and has failed to state a claim upon

which this court could grant relief.


3.     *Damages*

Plaintiff also seeks an award of damages for violation of the PA.[45]   The PA

authorizes the district court to grant monetary damages under specified circumstances.   5

U.S.C. § 552a(g)(4) provides:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this
> section in which the court determines that the agency acted in a manner which
> was intentional or willful, the United States shall be liable to the individual
> in an amount equal to the sum of--
>> (A)  actual damages sustained by the individual as a result of
>> the refusal or failure, but in no case shall a person entitled to
>> recovery receive less than the sum of $1,000; and
>> (B) the costs of the action together with reasonable attorney

---

[45] Plaintiff properly did not seek monetary damages under the FOIA as such damages are not permitted under that statute.  *See Wren*, 675 F.2d at 1147 ("The FOIA does not authorize an award of damages for a violation thereof.") (citing 5 U.S.C. § 552(a)(4)).

fees as determined by the court.

As discussed previously, if the complaint alleges an unlawful withholding of records requested under Section 552a(d)(1), the remedy afforded by the PA is an injunction against the withholding and an order requiring disclosure of the records.  5 U.S.C. § 552a(g)(3)(A). Monetary damages are not authorized in such an action.  Where, however, the complaint alleges a deficiency in maintaining the records, an award of damages is authorized by 5 U.S.C. § 552a(g)(4), if the court finds that the agency acted intentionally or willfully.

In order to establish a claim for damages under the PA, a causal connection between the allegedly erroneous agency record and an adverse determination made against the individual is required.  *Edison v. Dep't of Army*, 672 F.2d 840, 845 (11th Cir. 1982).[46]  In her Complaint, Plaintiff fails to allege that there was any adverse determination made against her, instead she alleges that a *threat* of such action exists.  (Comp., at p. 15) ("To Date, [Defendant] has refused to correct this misinformation; information that threatens to destroy Plaintiff's career.").   An allegation of an obscure threat simply does not suffice.[47]

_____

[46]  *See* 5 U.S.C. §§ 552a(g)(1)(C) and (D) ("Whenever any agency . . .(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and *consequently a determination is made which is adverse to the individual*; or (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an *adverse effect on an individual*, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.") (emphasis added).

[47]  The court need not address exhaustion of administrative remedies in its discussion of monetary damages because "[e]xhaustion of administrative remedies is not a precondition to bringing an action for damages under the [PA]."  *Hewitt*, 794 F.2d at 1379.

Accordingly, Plaintiff's claims for damages under the PA must fail and are due to be dismissed.

## V.   CONCLUSION

This case has been rendered more onerous than necessary because both sides have taken so many procedural and substantive liberties.  Plaintiff, for example, has persisted in submitting numerous arguments regarding Defendant's damaging and unlawful conduct towards her which are wholly immaterial to the issues before the Court in relation to her FOIA and PA requests.  Moreover, Plaintiff's voluminous documents attached to her Complaint arguably appear germane to an employment discrimination lawsuit, not a lawsuit based upon an alleged unlawful withholding of documents.  In a related vein, Defendant has submitted numerous arguments which are inconsistent and collateral to the material provisions of the statutes and agency regulations which control the issues at hand.  Inconsistency however does not nullify the simple and mandated requirements of the statutes and Defendant's regulations pertaining to exhaustion of administrative remedies.[48]

---

[48]  Plaintiff argues that the court should waive the exhaustion requirement.  A court may excuse a plaintiff's failure to exhaust administrative remedies in "extraordinary circumstances." *Taylor*, 127 F.3d at 477.

> Traditional circumstances in which courts have excused a claimant's failure to exhaust administrative remedies include situations in which (1) the unexhausted administrative remedy would be plainly inadequate, (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy, (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (e.g., the claimant contends that the administrative process itself is unlawful), and (4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the

As Justice Holmes once observed, "Men must turn square corners when they deal with the Government." *Rock Island, A. & L.R. Co. v. United States*, 254 U.S. 141, 143 (1920).[49]  In light of this principle, the court concludes that the exhaustion doctrine dictates that Plaintiff's claims under the FOIA and PA must be dismissed for failure to state a claim upon which relief can be granted.[50]

_____

claim.

*Id.*  The court finds that none of these exceptions to the general rule requiring exhaustion of administrative remedies applies in this case.  Furthermore, Plaintiff offers no explanation for her failure to exhaust her administrative remedies.  Consequently, the court is not persuaded by Plaintiff's argument.

[49]  Concluding at this point that this action should be dismissed because Plaintiff did not reasonably describe the records sought in her FOIA and PA requests and failed to satisfy the identity verification requirements for her PA requests would run the risk of elevating form over substance given the history of this matter.  On the other hand, to do otherwise might reward Plaintiff for prematurely filing this civil action and may encourage other citizens to do the same.  Additionally, there is no doubt that Plaintiff's FOIA and PA requests amounted to an all-encompassing fishing expedition of files at Defendant's offices and did not comply with Defendant's regulations before she filed suit.  This court simply cannot disregard those facts which directly contradict Congress' purpose for enacting these important statutes.  *See Assassination*, *supra* (These statutes were "not intended to reduce government agencies to full-time investigators on behalf of requesters.").  Accordingly, notwithstanding the success of Defendant's search efforts, Plaintiff's claims are due to be dismissed.

[50]  Apparently, the circumstances of this case nonetheless allowed Defendant to begin searching in 2003 for documents that might be responsive to a possible perfected FOIA and PA request.  In the April 11, 2003 hearing, Defendant asserted that it was able to begin searching for documents in response to Plaintiff's FOIA and PA requests, and Plaintiff conceded that she had received voluminous documents.  These postsuit actions however do not alter the deficient nature of Plaintiff's FOIA and PA requests and their resulting affect on commencement of Defendant's obligations.  In other words, these postsuit events are not germane to the court's analysis of Plaintiff's failure to satisfy presuit requirements.  Nonetheless, the court finds that, due to the fact that Plaintiff received some  requested information from Defendant while this matter was pending–a plight which has now continued for almost three years–she should be given a reasonable opportunity to appeal the decisions of the Defendant with regard to the documents released, withheld and not corrected since the commencement of this suit.  Hence, in spite of the fact that the 60 day deadline

29

For the foregoing reasons, it is hereby ORDERED as follows:

1.       The motion to dismiss (Doc. # 8) is GRANTED and this case is hereby DISMISSED without prejudice.

2.       As to the documents received by Plaintiff during the pendency of this action, she is hereby given the right to administratively appeal the decisions of Defendant with regard to the FOIA and PA documents released, withheld or not amended.  Such administrative appeal must be filed within 60 days from entry of this Memorandum Opinion and Order.  Any judicial appeal of the administrative appeal is not affected by this Memorandum Opinion and Order.

3.       The motion to strike (Doc. # 8) and motion for summary judgment (Doc. # 8) are DENIED as moot.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 21st day of June, 2005

_____
        /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

---

for filing appeals under the FOIA, *see* 28 C.F.R. § 16.9, and the PA, *see* 28 C.F.R. §§ 16.45 and 16.46, has expired, the court will reserve to Plaintiff the right to administratively appeal such decisions of Defendant.